# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 19-CR-20624-AHS

UNITED STATES OF AMERICA

v.

JUANA MIRTA QUINTERO,

   Defendant.

_____/

### <u>GOVERNMENT'S BRIEF IN AID OF SENTENCING</u>

  The United States of America respectfully submits this memorandum for the Court's consideration in connection with the sentencing of Juana Mirta Quintero (the "Defendant" or "Quintero"), presently scheduled for January 12, 2021 at 10:00 a.m.  For the reasons stated below, the Court should overrule the Defendant's objections to the Presentence Investigation Report ("PSI"), apply the offense level computation as determined by the United States Probation Office (Level 26), and deny her request for a downward departure and/or variance.  Probation's three-level enhancement for Quintero's aggravating role in the offense is correctly applied here because she recruited more than five individuals into the money laundering conspiracy and oversaw and directed them in their unlawful activities.  That is more than sufficient to establish that she qualifies for a role enhancement as a manager or supervisor (but not an organizer or leader), pursuant to Section 3B1.1(b) of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines").  The Court should likewise reject Quintero's request for a downward departure or variance based on her age because there is nothing specific about Quintero's age or case that is unusual or sets her apart from similarly situated defendants.

## PROCEDURAL AND FACTUAL BACKGROUND

### I.      Offense Conduct

For nearly two years, from April 2013 through January 2015, Quintero conspired to launder more than $1.3 million dollars that was stolen from the Medicare program.  *See* Agreed Factual Basis for Guilty Plea, ECF No. 35.  It is undisputed that, as part of the conspiracy, Quintero enlisted numerous others to assist her in laundering the fraud proceeds.  *See* PSI ¶ 13, ECF No. 59; Defendant's Objections to PSI, at 3, ECF No. 47.  Quintero collected checks issued by the fraudulent home health agencies, distributed the checks to her recruited accomplices, and directed them to cash the checks and return the cash to her.  *See* Agreed Factual Basis for Guilty Plea, ECF No. 35; PSI ¶¶ 10-14, ECF No. 59.  Quintero then returned that cash to the individuals running the underlying health care fraud, for their own use and to further the fraud.  *See* Agreed Factual Basis for Guilty Plea, ECF No. 35.

### II.     Procedural History

On February 7, 2020, Quintero pleaded guilty to one count of conspiracy to commit money laundering.  ECF No. 33.  She did not sign a plea agreement.  On March 12, 2020, Probation filed its Draft PSI.  Quintero filed her Objections to the Draft PSI on March 27, 2020, and Probation submitted its Revised PSI and Final Addendum on July 14, 2020.  The following day, on July 15, 2020, Quintero filed her Motion for a Downward Departure or Variance.  ECF No. 60.

### III.    Applicable Guidelines Range

The government concurs with the PSI's Guidelines calculations as they are consistent with the facts in this case.  Probation calculated Quintero's advisory Guidelines range as follows.  For Count 1, conspiracy to commit money laundering, the base offense level is eight, pursuant to Section 2S1.1.  PSI ¶ 33, ECF No. 59.  Next, Probation added fourteen levels because the value of

funds laundered by Quintero was more than $550,000 but less than $1,500,00, for a total offense level of twenty-two. *Id.* Because the Defendant was convicted under 18 U.S.C. § 1956, Probation added two more levels. *Id.* ¶ 34. Probation applied an additional two-level enhancement because the offense involved sophisticated laundering. *Id.* ¶ 35. Probation also applied a three-level enhancement based on Quintero's role as a manager or supervisor (but not an organizer or leader) in an offense involving five or more participants. *Id.* ¶ 37. Finally, Probation reduced Quintero's offense level by three levels based upon her acceptance of responsibility, pursuant to Section 3E1.1(a), (b). *Id.* ¶¶ 41-42. Probation thus properly calculated a Total Offense Level of 26, resulting in an advisory Guidelines range of 63 to 78 months. *Id.* ¶ 43.

Quintero objects to certain factual assertions in the PSI and to application of the role enhancement; she also requests a downward departure and/or variance based solely on her age. The government addresses each below.

## LEGAL STANDARD

In the Eleventh Circuit, a sentencing court must engage in a two-step inquiry when fashioning the appropriate sentence.

> First, the district court must consult the Guidelines and correctly calculate the range provided by the Guidelines. Second, the district court must consider several factors [set forth in 18 U.S.C. § 3553(a)] to determine a reasonable sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.

*United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005) (internal quotations and citations omitted).

"The government generally has the burden of proving a guideline enhancement by a preponderance of the evidence." *United States v. Carillo-Ayala*, 713 F.3d 82, 90 (11th Cir. 2013). In determining the appropriate advisory Guidelines range, a sentencing court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. §6A1.3(a).  A sentencing court is afforded wide latitude to make credibility determinations when determining the facts supporting specific Guidelines enhancements or adjustments.  *See United States v. Gregg*, 179 F3d 1312, 1316 (11th Cir. 1999) ("We accord great deference to the [sentencing] court's credibility determinations.").  Finally, the Eleventh Circuit requires that objections to the PSI be made with "'specificity and clarity' in order to alert the government and the district court to the mistake of which the defendant complains." *United States v. Ramirez-Flores*, 743 F.3d 816, 824 (11th Cir. 2014) (quoting *United States v. Aleman*, 832 F.2d 142, 145 (11th Cir. 1987)).

## ARGUMENT

### I. Quintero's Generalized Objections to Factual Assertions in the PSI Should Be Overruled

Quintero first lodges a set of generalized objections to "certain factual assertions in paragraphs 7-12 [of the PSI]."  Defendant's Objections to PSI, at 1, ECF No. 47.  Her objections do not provide any detail or specificity as to how or why the factual assertions are incorrect. Instead, Quintero quotes two factual assertions from paragraphs 9 and 11 of the PSI—one of which is drawn directly from her signed factual basis[1]—and then simply objects to "all factual recitations

---

[1] In her brief, Quintero specifically objects to the following statement: "Y. Gonzalez and Quintero then returned the remaining fraud proceeds in cash to M. Gonzalez, Alfaro and Marquez at Golden, Homestead, and MA for their own use and to further the fraud."

in paragraphs 13-21 [of the PSI]."  *Id.*  These objections lack the requisite "specificity and clarity in order to alert the government and the district court to the mistake of which the defendant complains," and therefore do not shift the burden to the government to prove the supposedly disputed facts.  *Ramirez-Flores*, 743 F.3d at 824; *United States v. Hamidullah*, 768 Fed. App'x 914, 918 (11th Cir. 2019) ("[The defendant's] objections enumerated in detail and with specificity which portions of the PSI he challenged as factually unsupported.  These objections shifted the burden to the Government to prove the disputed facts by a preponderance of the evidence . . . .").  Nevertheless, putting aside the sufficiency of the Defendant's objections, the government contends that the material facts supporting Probation's offense level computation are not actually in dispute; to the extent the Court finds that they are, the government is prepared to offer reliable evidence at sentencing to support Probation's Guidelines calculations.

## II.     Probation Properly Applied a Three-Level Role Enhancement Because Quintero Recruited and Oversaw Numerous Money Launderers

Quintero also objects to Probation's application of a three-level enhancement based on her role as a manager or supervisor (but not an organizer or leader) in an offense involving five or more participants.  Quintero does not dispute that she recruited others into the money laundering conspiracy.  Rather, Quintero's objection is based on an analysis of certain factors identified in the Guidelines that are used to "distinguish[] a leadership and organizational role from one of mere management or supervision[.]"  U.S.S.G. § 3B1.1, Application Note 4.  Her arguments on this point are misplaced because Probation did not apply a four-level enhancement based on Quintero's role as a leader or organizer; rather, it applied a three-level enhancement based on her role as a

---

Defendant's Objections to PSI, at 1, ECF No. 47.  But her factual basis contains a nearly identical statement: "Quintero then returned the remaining fraud proceeds in cash to individuals at Golden, Homestead, and MA for their own use and to further the fraud."  Agreed Factual Basis for Guilty Plea, at 2, ECF No. 35.

manager or supervisor.  Application of that role enhancement is appropriate here because it is well-supported by the facts and relevant case law.

It is undisputed that Quintero recruited numerous individuals to cash checks at her direction.  In one instance, Quintero directed a recruited launderer to open a shell company so that checks could be issued in the company's name, rather than the individual's name, to better conceal their laundering activities.  *See* PSI ¶ 23; *United States v. Nelkys Tabares*, Case No. 20-CR-20036-MARTINEZ, Agreed Factual Basis for Guilty Plea, ECF No. 16.  Quintero also instructed that recruited launderer on what bank to use and which specific bank employee to talk to.  PSI ¶ 23. The Eleventh Circuit has upheld application of role enhancements in similar cases.  *See United States v. Truss*, 723 Fed. App'x 660, 667 (11th Cir. 2018) (affirming application of a three-level role enhancement where the defendants "recruited claimants to provide false claims"); *United States v. Thomas*, 446 F.3d 1348, 1355 n.2 (11th Cir. 2006) (affirming a defendant's aggravating role enhancement when the sole criterion discussed was the defendant's recruitment of others); *United States v. Caraballo*, 595 F.3d 1214, 1232 (11th Cir. 2010) (affirming a four-level leadership enhancement when, among other things, the government presented evidence that defendant had recruited another participant and given specific instructions on how to commit the crime).  The Court should do the same here because the evidence is undisputed that Quintero recruited numerous individuals into the scheme and directed and oversaw their laundering activities.

### III.    Quintero's Request For a Downward Departure or Variance Based on Her Age Should Be Denied Because There Is Nothing Unusual About Her Case

Quintero also asks the Court for a downward departure or variance based solely on her age, arguing that such a departure or variance is appropriate because "[t]he Bureau of Prisons is not equipped to care for elderly inmates like Ms. Quintero."  Def.'s Motion at 3, ECF No. 60.  This is so, according to Quintero, because (1) BOP's lack of staffing leaves older inmates open to abuse

and manipulation; (2) BOP lacks adequate medical professionals; and (3) BOP cannot safely house elderly inmates.  *Id.* at 3-6.  This Court should reject Quintero's simplistic argument, which is that that *all* elderly defendants deserve home confinement because the BOP purportedly lacks adequate resources to properly care for them

The Sentencing Guidelines provide that "[a]ge (including youth) may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an *unusual degree and distinguish the case* from the typical cases covered by the guidelines."  U.S.S.G. 5H1.1 (emphasis added). Quintero does not point to anything specific to her that sets her apart from other older defendants or that distinguishes her case from the typical cases involving similarly situated defendants.  Her complaints about the BOP writ large are plainly inadequate to justify a downward departure or variance.

Quintero also argues that a downward departure or variance is warranted based on her age because home detention would be "less costly and just as effective."  *Id.* at 3.  She continues:

> Ms. Quintero is highly unlikely to commit a new crime: aging adults in prison have the *lowest* recidivism rate and pose almost no threat to public safety.  Nationwide, 43.3% of all released individuals recidivate within three years, while only 7% of those aged 50-64 and a mere 4% of those over 65 are returned to prison for new convictions—the lowest rates among all incarcerated demographics.

*Id.* at 8.  This argument ignores the fact that Quintero was 68 at the time that she completed her crime.  If anything, Quintero's age may be viewed as an aggravating factor because she had the benefit of a lifetime of experience and should have known better than to engage in a conspiracy to launder more than $1.3 million of stolen Medicare funds.  Worse still, she roped her only son—her co-defendant—into the conspiracy.  Furthermore, accepting Quintero's arguments for a downward departure or variance based solely on the fact that

she is 72 would defeat the principal purposes of sentencing for this serious crime:  A sentence of home detention for a $1.3 million-dollar money laundering conspiracy does not provide the "just punishment, deterrence, incapacitation, or rehabilitation" that are the goals of the Sentencing Guidelines.  *See An Overview of the United States Sentencing Commission*, *available* *at* https://www.ussc.gov/sites/default/files/pdf/about/overview/USSC_Overview.pdf   (last accessed Jan. 10, 2021).  It would also result in unwarranted sentencing disparities with her co-conspirators in this sprawling health care fraud and money laundering conspiracy who all received prison sentences.

Mildrey Gonzalez, who was one of the leaders of the underlying health care fraud, and to whom Quintero directly reported, was 62 at the time of her sentencing and was sentenced to 135 months' incarceration.  *See United States v. Gonzalez*, Case No. 16-CR-20461-JEM, ECF No. 245 (S.D. Fla. June 16, 2017).  The other leader of the fraud was sentenced to 151 months' incarceration.  *See United States v. Alfaro*, Case No. 16-CR-20461-JEM, ECF No. 246 (S.D. Fla. June 16, 2017).[2]  Most notably, one of the many check cashers who Quintero recruited into the scheme and directed in her unlawful activities, and who laundered only $169,462 of fraud proceeds, was recently sentenced to 24 months' incarceration.  *See United States v. Tabares*, Case No. 20-CR-20036-JEM, ECF No. 37 (S.D. Fla. Dec. 23, 2020).  A sentence for Quintero that is less than—or even close to—a money launderer who she *recruited into the scheme* and who laundered a *small fraction of what she did* would be manifestly unjust and create an unwarranted sentencing disparity.

---

[2] Although Quintero points to these Defendants' reduced sentences after the government filed Rule 35 motions based on their extensive cooperation, this Court should look to their original sentences because those are the relevant sentences in these circumstances.

Finally, Quintero argues that she deserves home detention or a downward departure or variance because of the COVID-19 pandemic. Once again, this argument applies equally to all criminal defendants who have been or will be sentenced during the pandemic. Any concerns this Court may have about sentencing Quintero to a term of incarceration at this time can be mitigated by simply delaying her date of surrender, as has been done in many sentencings that have taken place between the start of the pandemic and now.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court apply the offense level computation as determined by the United States Probation Office, resulting in an offense level of 26, and sentence Quintero to a term of imprisonment at the low end of the Guidelines range of 63 to 78 months.

**DATED**: January 11, 2021

Respectfully submitted,

DANIEL KAHN, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:     */s/ Alexander Thor Pogozelski*
        Alexander Thor Pogozelski
        Florida Special Bar No. #A5502549
        Trial Attorney
        United States Department of Justice
        Criminal Division, Fraud Section
        1400 New York Avenue, N.W.
        Washington, D.C. 20005
        Tel: (202) 510-2208
        Email: alexander.pogozelski@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on January 11, 2021, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.

<blockquote>

By:    <u>*/s/ Alexander Thor Pogozelski*</u>
Alexander Thor Pogozelski
Trial Attorney
United States Department of Justice

</blockquote>